UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

Plaintiff,

v.

MELVIN LAWRENCE,

Defendant.

Crim. No. 03-00092 (CKK)

MEMORANDUM OPINION
(September 3, 2020)

Defendant Melvin Lawrence ("Defendant" or "Mr. Lawrence") moves to reduce his

sentence pursuant to Section 404(b) of the First  Step Act, Pub. L. No. 115-391, § 404(b), 132

Stat. 5194, 5222  (2018).  On July 2, 2019, Mr. Lawrence filed a [119]  *pro se* motion to reduce

his sentence pursuant to Section 404 of the First Step Act of 2018, which is [at least partially]

incorporated by reference in Defendant's [127] Motion to Reduce Sentence Pursuant to the First

Step Act of 2018, which was filed by defense counsel on behalf of Mr. Lawrence.[1]  At the time of

sentencing, Mr. Lawrence's offense for the crime of unlawful possession with intent to distribute

---

[1]  In connection with this Memorandum Opinion and the accompanying Order, the Court
considered the following:  (1) Defendant's *Pro Se* Application of Section 404 of the First Step Act
of 2018 to Reduce Sentence ("Def.'s *Pro Se* Mot."), ECF No. 119; (2) Defendant's Motion to
Reduce Sentence Pursuant to the First Step Act of 2018 ("Def.'s Mot."), ECF No. 127; (3) The
United States' Response to Defendant's Motion to Reduce Sentence Pursuant to the First Step Act
of 2018 ("Govt. Opp'n"), ECF No. 130 (which addresses claims from both ECF Nos. 119 and
127); (4) Defendant's Reply to Government Response to Defendant's Motion for Reduction of
Sentence Pursuant to the First Step Act of 2018 ("Def.'s Reply"), ECF No. 131; (5) the Probation
Officer's Revised Presentence Report, ECF No. 72;  (6) Transcript of October 5, 2009 Re-
Sentencing ("Oct. 5, 2009 Tr."), ECF No. 103; (7) the Probation Office Memorandum, ECF No.
132 (which was submitted for informational purposes only) and (7) the entire record in this case.

five grams or more of crack cocaine carried a five-year mandatory minimum sentence and a maximum sentence of forty years of imprisonment.  In 2010 and 2018, the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372 (2010), and the First Step Act were enacted,  *inter alia*, to reduce the harsh penalties for cocaine-based offenses by eliminating the five-year mandatory minimum sentence and lowering the maximum sentence to twenty years (240 months) of imprisonment for offenses involving less than 28 grams of crack cocaine.

At sentencing, Mr. Lawrence qualified as a career criminal because of his prior drug offenses, *see* Final Pre-Sentence Report, ECF No. 72, at 6, and his career offender Guidelines range was calculated at 262-327 months, *id.* at 17.  Mr. Lawrence is currently serving a term of 250 months of incarceration and five years of supervised release.  Under the current Sentencing Guidelines, Mr. Lawrence remains a career offender, and his revised career offender Guidelines range is 210-262 months, but the statutory maximum for his offense is 20 years.[2]  To date, Mr. Lawrence has served approximately 209 months (over 17 years) in prison.  Mr. Lawrence requests that this Court reduce his sentence to time served and three years of supervised release. The Government does not dispute the Defendant is eligible for a sentence reduction pursuant to the First Step Act, nor does it oppose a 10-month reduction, to 240 months, so that Mr. Lawrence's sentence does not exceed the current statutory maximum, but the Government does oppose any further reduction.  For the reasons set forth in detail herein, this Court GRANTS IN PART AND DENIES IN PART Defendant's [127] Motion to Reduce Sentence Pursuant to the First Step Act of 2018 and Defendant's [119] *pro se* Motion to Reduce Sentence, which is incorporated by reference [at least partially] in Defendant's [127] Motion.   Defendant's

---

[2] In Defendant's Motion, counsel notes that, in his *pro se* First Step Act request, Mr. Lawrence indicated that he "believes his prior convictions do not count for sentencing purposes."  Counsel "incorporates by reference the defendant's pro se argument" and asks that the Court rule on that issue.  Def.'s Mot., ECF No. 127, at 8 n. 4.  This issue will be addressed in more detail in Section III D. herein.

sentence shall be reduced to 240 months, followed by 3 years of supervised release.

I. Factual and Procedural Background

In 2003, a grand jury indicted Mr. Lawrence on one count of Unlawful Distribution of 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) and two counts of Unlawful Distribution of 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii).  *See* Indictment, ECF No. 1.   This Court convened a trial, and on September 30, 2003, a jury convicted Mr. Lawrence of distributing 5 grams or more of crack cocaine based on an April 10, 2002 sale to undercover officers.  *See* Jury Verdict, ECF No. 25.  The jury was unable to reach a verdict on the two other charges, and the trial court declared a mistrial, with the Government later moving to dismiss those charges.  The trial court deferred sentencing Mr. Lawrence until resolution of Defendant's three charges in his other criminal matter (Criminal Case No. 03-175-01), which was pending before the Honorable John G. Penn.  In that case, a jury found Mr. Lawrence guilty on one count of Unlawful Possession With Intent to Distribute 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii); one count of Using, Carrying and Possessing a Firearm in Relation to a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1); and one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for One Year or More, in violation of 18 U.S.C. § 922(g)(1).

On February 1, 2005, Judge Penn held a consolidated sentencing for both cases and sentenced Mr. Lawrence on his charge of distribution of 5 grams or more of crack cocaine [from the instant case] to 260 months of incarceration, followed by five years of supervised release, with his sentence to run concurrent with the sentence imposed in Criminal Case No. 03-175-01 regarding counts 1 and 3.  *See* February 1, 2005 Minute Entry.

Mr. Lawrence filed an appeal in both cases; his conviction in this case was affirmed while the three convictions in Criminal Case No. 03-175-01 were reversed.  *See United States v. Lawrence*, 471 F.3d 135, 139, 143 (D.C. Cir. 2007) (*Lawrence I*).  The Court of Appeals for the District of Columbia Circuit remanded the instant case for re-sentencing, which was handled by the undersigned.  On remand, this Court adopted the Probation Office's revised Presentence Investigation Report, ECF No. 72.  Mr. Lawrence was determined to be a career offender pursuant to Section 4B1.1 of the United States Sentencing Guidelines because he had two prior felony convictions for controlled substance offenses, and as a result, his total offense level was 34, and his criminal history category was VI, which resulted in a Guidelines range of 262 to 327 months. *See United States v. Lawrence*, 662 F.3d 551, 555 (D.C. Cir. 2011) (*Lawrence II*).

Defendant's counsel argued for a significant downward variance (to 92 to 115 months) based on the following reasons: (1) Defendant's career offender status allegedly overstated his criminal history; (2) the offense in this case did not involve a large quantity of crack; (3) to account for the crack-powder disparity in the then-applicable sentencing laws; (4) Defendant had completed educational programs during his incarceration; and (5) Defendant's poor record on community supervision was at least partially due to failed drug tests rather than new arrests and convictions.  *See* Transcript of October 5, 2009 Re-Sentencing ("Oct. 5, 2009 Tr."), ECF No. 103, at 10.

This Court considered Mr. Lawrence's lengthy criminal history, beginning at the age of 12, and involving – among other crimes - various charges and convictions related to drugs, some of which occurred while Mr. Lawrence was on parole.  Oct. 5, 2009 Tr., ECF No. 103, at 13-20.  The Court disagreed that Defendant's criminal history was over-represented, instead indicating that "I would say that as an adult . . . he's generally spent a substantial period of time

locked up, and while in the community he has not been in compliance with his parole.  He's had his parole violated, his earlier case, his probation was revoked, he lost advantage of the Youth Act."  *Id.* at 19-20.  The Court noted that "[w]hether as a juvenile or an adult, [Defendant] has a substantial record, and if you combine and start at age 12 all the way through, and there's no long intervening periods when either he's not involved in criminal behavior, locked up or he's not complying with parole conditions."  *Id.* at 20.  The Court indicated further that this was "not a victimless crime" because it "tears the fabric of our community, it can result in violence, . . . [and] it effects the community at large."  Oct. 5, 2009 Tr., ECF No. 103, at 20.  The Court noted additionally that Defendant had not expressed any "remorse or acceptance of responsibility for the conduct which is at issue in this case" which somewhat undercut his statement that he would "turn over a new leaf."  *Id.* at 20-21.  The Court acknowledged however that Defendant had obtained his GED and taken some courses while locked up and thus, "actually made some efforts there."  *Id.* at 22.

Because the Court disagreed with the "continuing policy regarding higher penalties for crack cocaine versus powder," it accordingly afforded Defendant "somewhat of a variance, although not as substantial as counsel has requested."  *Id.* at 24.  This Court imposed a sentence of 250 months of incarceration (a 12-month downward variance) and five years of supervised release.  *See* Amended Judgment, ECF No. 93. Mr. Lawrence appealed from the final judgment, *see Lawrence II, supra.*, and while his appeal was pending, he filed Defendant's [105] Motion to Vacate pursuant to 28 U.S.C. § 2255, which asserted ineffective assistance of counsel claims, which was denied by this Court.  *See* Memorandum Opinion, ECF No. 113. On November 15, 2011, the Circuit Court affirmed this Court's Amended Judgment and held that the Court had properly applied the career offender guidelines provision and acted within its discretion when declining to grant the requested significant downward variance.  *See Lawrence*

5

*II*, 662 F. 3d at 551.

In 2018, the First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018), became law and gave retroactive effect to the statutory penalty provisions of the Fair Sentencing Act.. Under the First Step Act, a district court has the discretion to reduce a defendant's sentence if the court determines that the defendant is eligible for relief. *Id.* Mr. Lawrence's [127] Motion to Reduce Sentence Pursuant to the First Step Act of 2018 has been fully briefed and is now ripe for the Court's adjudication.

II. <u>Legal Standard</u>

The Controlled Substances Act set forth three statutory penalty ranges "applicable to a drug offender depending primarily upon the kind and amount of drugs involved in the offense." *Dorsey v. United States*, 567 U.S. 260, 266 (2012) (citing 21 U.S.C. Sections 841(b)(1)(A)-(C)).  At the time Mr. Lawrence was charged, convicted and then re-sentenced by this Court, and until 2010, the 5-to-40 year range was triggered by a drug trafficking offense involving 5 grams or more of cocaine base. *Id.* Section 841(b)(1)(B)(iii) (1993).  This penalty scheme treated "crack cocaine crimes as far more serious" than powder cocaine crimes, *Dorsey*, 567 U.S. at 266, "impos[ing] upon an offender who dealt in powder cocaine the same sentence it imposed upon an offender who dealt in one one-hundredth that amount of crack cocaine," *id.* at 263.

In 2010, Congress attempted to address this disparity by enacting the Fair Sentencing Act ("FSA"), Pub. L. 111-220, 124 Stat. 2372 (2010), *id.,* which "reduc[ed] the crack-to-powder cocaine disparity from 100-to-1 to 18-to-1," *id.* at 264.  The Fair Sentencing Act's section 2(a) "increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5-year minimum[.]" *Dorsey*, 567 U.S. at 269.  This new penalty system did not however apply to defendants sentenced prior to the

FSA's August 3, 2010 effective date, such as Mr. Lawrence.  *See United States v. Swangin*, 726 F.3d 205, 207 (D.C. Cir. 2013).

In 2018, Congress enacted Section 404 of the First Step Act, and under Section 404(b), "[a] court that imposed a sentence for a covered offense may, on motion of the defendant . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222. "[T]he term 'covered offense' means a violation of a federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . ., that was committed before August 3, 2010." *Id.* § 404(a). In other words, the First Step Act effectively authorizes a federal district court to retroactively apply the statutory penalty provisions of the Fair Sentencing Act to a covered offense, such as the unlawful possession of five grams or more of crack cocaine with the intent to distribute it, and thereby reduce a defendant's sentence.  *United States v. Powell*, 360 F. Supp. 3d 134, 138 (N.D.N.Y. 2019); *see also United States v. Rose*, 379 F. Supp. 3d 223, 229 (S.D.N.Y. 2019) ("[B]oth the Fair Sentencing Act and the First Step Act have the remedial purpose of mitigating the unfairness created by the crack-to-powder cocaine ration.")  The First Step Act gives courts discretion to reduce the sentences of defendants who were sentenced prior to the FSA, upon review of the circumstances of an individual case.  *See* First Step Act, §§ 404(b), (c).

III. Discussion

A. The First Step Act Applies to the Defendant in this Case

As a preliminary matter, the parties agree that Mr. Lawrence's drug violation — based upon an illegal drug transaction involving 21.1 grams of crack cocaine — is a "covered offense" as defined by the First Step Act.  At the time of Defendant's resentencing in 2009, an offense involving 21.1 grams of crack was subject to the statutory penalties under 21 US.C. §

841(b)(1)(B)(iii) – 5 to 40 years of incarceration.   After the FSA was enacted, an offense involving 21.1 grams of crack is subject to the statutory penalties under § 841(b)(1)(C) – up to a maximum of 20 years of incarceration.   Accordingly, the violation in this case is a "covered offense" under the First Step Act, and Defendant is eligible for sentencing relief.

      B. <u>The Court's Authority to Impose a Reduced Sentence Under the First Step Act</u>

      The parties agree that the Court may exercise its discretion to impose a reduced sentence under the First Step Act. *See* Gov't. Opp'n., ECF No. 130 at 9 ("The Court's decision as to whether to grant a sentencing reduction for an eligible defendant is discretionary."); *see also* Def.'s Mot., ECF No. 127, at 6-8 (generally discussing the broad scope of the court's resentencing authority and what it "may" do).  Indeed, "Congress clearly intended relief under § 404 of the First Step Act to be discretionary[.]" *United States v. Rose*, 379 F. Supp. 3d at 233; *see United States v. White*, 413 F. Supp. 3d 15, 31 (D.D.C. 2019), *appeal filed*, Aug. 13, 2019. (noting the court's discretion under the First Step Act), *United States v. Mitchell*, Crim. No. 05-00110 (EGS), 2019 WL 2647571, at *3 (D.D.C. June 27, 2019) (slip op.) ("Under the First Step Act, a district court has the  discretion to reduce a defendant's sentence" if the defendant is determined to be eligible for relief.)

      Section 404(c) of the First Step Act expressly provides that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." Pub. L. No. 115-391, § 404(c), 132 Stat. 5194, 5222. The First Step Act places two limits on the district court's authority. *Id.* A district court "shall" not reduce a sentence: (1) "if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act[;]" and (2) "if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits." *Id.* Nothing else in Section 404 limits the

Court's authority to reduce a sentence. *See id.*  It is undisputed that neither limitation applies in this case.

C.   Section 404 Proceedings are Subject to 18 U.S.C. Section 3582(c)(1)(B) and No Plenary Hearing is Required

In his *pro se* Motion, Defendant asserts that Section 404 of the Act is a "freestanding remedy for defendants who are eligible for relief under its terms" and furthermore, its "plain text" gives the court authority "to conduct a full resentencing (unlike Section 3582(c)(2) motions), in the defendant's presence." Def's *Pro Se* Mot., ECF No. 119, at 4.   This raises two related issues: (1) whether Section 404 proceedings are subject to 18 U.S.C. Section 3582(c); and (2) whether Defendants are entitled to plenary resentencing hearings. Defendant's Motion, ECF No. 127, which was filed by counsel, does not address these issues.

1. Application of Section 3582(c)

Pursuant to 18 U.S.C. Section 3582(c)(2), a court "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. Section 3582(c); *Dillon*, 560 U.S. at 819. This "rule of finality" is "subject to" the "narrow exceptions" set forth in Section 3582(c). *Freeman v. United States*, 564 U.S. 522, 526 (2011) (plurality), *holding modified in other respects by Hughes v. United States* — U.S. —, 138 S. Ct. 1765 (2018).   The Government acknowledges that Section 3582(c) is not incorporated into the First Step Act, Govt. Opp'n., ECF No. 130, at 11 n.2, but asserts that "Defendant's motions pursuant to § 404of the First Step Act implicate the second of [three] exceptions" set forth in Section 3582(c).  Govt. Opp'n., ECF No. 130, at 8.

Courts have reached different conclusions on the open question of whether Section 404(b)

motions are governed by 18 U.S.C. § 3582(c).[3]  In *White*, *supra.*, the Honorable Beryl A. Howell

engaged in a thorough discussion of the legislative history of Section 3582(c) and Section 404

before ultimately rejecting the claim that Section 404 "created a freestanding remedy that

authorizes the district court to impose a reduced sentence for a covered offense, independent of §

3582(c)," on ground that this ignored the "statutory text of both § 3582(c) and the First Step Act

that compel the contrary conclusion." *White*, 413 F. Supp. at 40 (internal quotation marks

omitted).  Chief Judge Howell concluded that "the only one of § 3582(c) narrow exceptions

applicable is that authorization to modify the defendants' sentences must be expressly permitted

by statute[,]" and the applicable "statute authorizing a modification" is "the First Step Act's

Section 404, which must be read to operate through the exception at § 3582(c)(1)(B)."  *White*,

413 F. Supp. at 39 (internal quotation marks and citations omitted)..  Following the reasoning in

*White*, this Court rejects Defendant's claim that Section 404 provides a "freestanding remedy"

authorizing the imposition of a reduced sentence by this Court and instead finds that Section

---

[3] In *Mitchell*, 2019 WL 2647571, at *9 n.5, the Honorable Emmet G. Sullivan declined to take a position on this issue but examined the different approaches taken by courts, summarized as follows:

Some courts have concluded that Section 404(b) motions fall under either § 3582(c)(1)(B) or § 3582(c)(2). *See, e.g.*, *United States v. Davis*, No. 07-CR-245S (1), 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) (construing "motion as one brought under 18 U.S.C. § 3582 (c)(1)(B), which permits modification of an imposed term of imprisonment to the extent expressly permitted by statute."); *United States v. Lewis*, No. CR 08-0057 JB, 2019 WL 2192508, at *19 (D.N.M. May 21, 2019) ("First Step Act motions for sentence reduction are 18 U.S.C. § 3582(c)(2) proceedings."). Other courts have held that § 3582(c)(2) or 3582(c)(1)(B) does not govern motions brought under the First Step Act. *See, e.g.*, *United States v. Martinez*, No. 04-CR-48-20 (JSR), 2019 WL 2433660, at *3 (S.D.N.Y. June 11, 2019) (holding that § 3582(c)(2) did not govern the defendant's case because his "sentencing range was lowered by statute, not by the Commission."); *Rose*, 2019 WL 2314479, at *6 ("Section 3582(c)(1)(B) is . . . not itself a source of authority for sentence modifications, nor does it delineate the scope of what the district court should consider when resentencing is authorized by another provision."); *United States v. Coleman*, No. 04-CR-278-PP, 2019 WL 1877229, at *6 (E.D. Wis. Apr. 26, 2019) (finding that § 3582(c)(2) was inapplicable because"[t]he defendant is not asking for a reduced sentence "based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)," under § 3582(c)(2).").

404(b) of the First Step Act operates through Section 3582(c).

2. Plenary Hearing

In his *pro se* Motion, Defendant claims entitlement to a plenary hearing, without providing any additional authority for this statement. Def.'s *Pro Se* Mot., ECF No. 119, at 4. The Government contends that the First Step Act does not authorize a plenary resentencing proceeding that requires a hearing where defendant is present. Govt. Opp'n, ECF No. 130, at 10. The Government explains that Section 404 calls for reconsideration of a sentence "as if sections 2 and 3 of the [FSA] were in effect at the time," First Step Act Section 404(b), and the only change is "a substitution of the new provisions of the Fair Sentencing Act for the corresponding provisions of 21 U.S.C. § 841(b)(1) that were in effect at the time of the original sentencing." Govt. Opp'n., ECF No. 130, at 10; *see United States v. White*, 413 F. Supp. 3d 15, 39 (D.D.C. 2019) ("[C]ontrary to the defendants' assertions, this means that the defendants are entitled to adjustments in their otherwise final sentences only as expressly authorized in Section 404, and are not entitled to plenary resentencing hearing, at which the defendants are present.").

In *White,* the court relied on the analysis in *Dillon*, where the Supreme Court concluded that, in Section 3582(c)(2), no "plenary resentencing proceeding" was authorized because that section "only granted the power to reduce an otherwise final sentence in circumstances specified by the [U.S.] Sentencing Commission and applied only to a limited class of prisoners whose sentences were, pursuant to the Commission's policy statement at U.S.S.G. § 1B1.10 based on a sentencing range subsequently lowered by the Commission." *White*, 413 F. Supp. 2d at 41-42 (citing *Dillon*, 560 U.S. at 825-26) (internal quotation marks omitted)). The Government notes further that the Supreme Court's reasoning in *Dillon* "strongly supports construing § 404 of the First Step Act to authorize a similarly curtailed sentencing proceeding

[as] Section 404 authorizes the court to 'impose a reduced sentence,' using the same term – 'reduce[]'- that appears in § 3582(c)(2); it does not permit 'further sentencing' or a 'resentenc[ing].'"   Govt. Opp'n, ECF No. 130, at 11 n.2 (citing *Dillon*, 560 U.S. at 825 (quoting 18 U.S.C. § 3742(f)-(g))).

The Government contends also that Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves correction or reduction of sentence under . . . 18 U.S.C. § 3582(c)." Gov't Opp'n., ECF No. 130, at 10; *see Dillon*, 560 U.S. at 827-28 (Sentence reduction proceedings stand "as a narrow exception to the rule of finality" and accordingly Rule 43, which "requires that a defendant be present at 'sentencing,' *see* Rule 43(a)(3), . . . excludes from that requirement proceedings that 'involv[e] the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c),' [*see*] Rule 43(b)(4).")

Accordingly, upon consideration of the argument presented by the Government, which relies upon the reasoning in *Dillon, supra.* and *White, supra.*, and the Defendant and his counsel having proffered no authority that a plenary hearing is required, this Court finds that no hearing is required to afford Mr. Lawrence an opportunity to be present, and no hearing is necessary on Defendant's motion for a reduction of sentence pursuant to the First Step Act.

D.  The Applicable Guidelines Range

The Court next addresses Defendant's claim that he is no longer classified as a career offender.  The Court notes that Defendant's "argument" in his *pro se* motion is contained in a single sentence: "U.S.S.G. § 4B1.1 is no longer applicable because Lawrence does not have two qualifying predicates." *See* Def.'s *Pro se* Mot., ECF No. 119, at 4.  Defendant proffers no legal authority in support of his assertion, and it is contradicted by the record in this case, which indicates that Defendant had two predicate drug offenses, which were confirmed by the

Probation Office to be predicate offenses that continue to qualify Defendant as a career offender.  *See* Probation Office Memorandum, ECF No. 132, at 3.  Accordingly, with a criminal history category VI and the career offender enhancement, Mr. Lawrence's career offender Guidelines range is 210-262 months of imprisonment.  Def.'s Mot., ECF No. 127, at 7; Govt. Opp'n., ECF No. 130, at 14.  Since the statutory maximum penalty for the offense at issue is 20 years imprisonment, Mr. Lawrence's Guidelines range would be 210-240 months imprisonment.  U.S.S.G. 5G1.1(c)(1).

E. Determining the Appropriate Sentencing Reduction

Having determined that Mr. Lawrence is eligible for relief under the First Step Act, the Court must determine the extent to which Mr. Lawrence's sentence will be reduced. To reach that determination, the parties agree that this Court may consider the sentencing factors set forth in 18 U.S.C. § 3553(a).  *See* Def.'s Mot., ECF No. 127, at 7-8; Gov't Opp'n, ECF No. 130 at 12-14. "Importing the standard set forth in § 3553(a) makes sentencing proceedings under the First Step Act more predictable to the parties, more straightforward for district courts, and more consistently reviewable on appeal." *Rose*, 379 F. Supp. 3d at 235.  As summarized by the Government, these considerations include: the current applicable guidelines range, as well as "the nature and circumstances of the offense," "the history and characteristics of the defendant," and the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training, medical care, and other correctional treatment."  Govt. Opp'n, ECF No. 130, at 10; *see* 18 U.S.C. Section

The Government asserts further that the Court should consider also the Defendant's

13

post-sentencing conduct in deciding whether or not to adjust a sentence that was previously imposed.  Govt. Opp'n, ECF No. 130, at 10 (citing *Pepper v. United States*, 562 U.S. 476 (2011)).  In *Pepper*, the Supreme Court held that "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's post-sentencing rehabilitation . . . ."  *Pepper*, 562 U.S. at 481. When applying the factors set forth in 18 U.S.C. § 3553(a) to guide the exercise of discretion under the First Step Act, some courts have relied on the Supreme Court's decision in *Pepper* to consider a defendant's post-sentencing rehabilitation and conduct. *See Rose*, 379 F. Supp. 3d at 233-234; *see also United States v. Nance*, No. 8:08CR449, 2019 WL 2436210, at *3 (D. Neb. June 10, 2019).  Courts have interpreted the principle articulated in *Pepper* to permit district courts to consider post-sentencing conduct evidence that "does not always benefit the defendant" and "evidence of bad acts occurring after the defendant was originally sentenced." *Rose*, 379 F. Supp. 3d at 235; *see also Nance*, 2019 WL 2436210, at *3 (stating that consideration of "a defendant's post-incarceration conduct when exercising discretion to reduce a defendant's term of incarceration due to retroactive changes in statutes or sentencing guidelines "is consistent with *Pepper*). The Court is persuaded that consideration of Mr. Lawrence's post-sentencing conduct and the factors set forth in 18 U.S.C. § 3553(a) is appropriate under Section 404(b) of the First Step Act.  *See Rose*, 379 F. Supp. 3d at 234-235; *see also United States v. Mitchell*, 2019 WL 2647571, at * 7 (To determine the extent to which the defendant's sentence will be reduced, the court "may consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and any post-sentencing conduct.")

    1. <u>Section 3553(a) Factors</u>

Defendant, through counsel, argues that, upon consideration of the reduced penalty for the offense (up to 20 years), Mr. Lawrence's sentence should be reduced to time served with a

three year period of supervised release because such sentence "would be sufficient, but not greater than necessary, to comply with the statutory directives set out in 18 U.S.C. § 3553(a). Def.'s Mot., ECF No. 127, at 7. Defendant's Motion focuses on Mr. Lawrence's age - 50 years old - and the fact that recidivism rates decline with age. *See* Def.'s Mot., ECF No. 127, at 8 (citing several sources). Defendant acknowledges that "his criminal history demonstrate room for improvement" but notes that at the time of his offense in 2002, "he had been conviction free for over a decade," and he has now served over 17 years for the sale of 21.1 grams of crack cocaine, when it would be "highly unusual for a case of this nature to be federally prosecuted today." Def.'s Mot., ECF No. 127, at 8. Defendant mentions also that he has "severe health issues," *id.,* and in a footnote, he references his Pretrial Sentence Report and states that "in all likelihood, [he] meets the criteria for compassionate release." *Id.* at 8, n.3. The Court notes that Defendant has not filed a motion for compassionate release, and accordingly, that issue is not before this Court.

The Government does not oppose a 10-month reduction of Defendant's current 250-month sentence so that Defendant's sentence does not exceed the statutory maximum penalty of 240 months. The Government argues that this Court should exercise its discretion to deny any additional reduction for the following reasons. First, during the Defendant's re-sentencing, this Court discussed in detail Defendant's lengthy period of criminal behavior and noted his poor record of compliance with periods of community supervision. This Court considered also that Defendant did not show remorse or accept responsibility for his actions. Because of his lengthy criminal history, poor record of compliance, and refusal to accept responsibility, Defendant's request for a large downward variance during his re-sentencing was largely rejected by this Court. Instead, the Court imposed a 12-month downward variance, attributable to this Court's disagreement with the policy of disparity in punishment for cocaine and crack

cocaine.  Furthermore, as previously discussed, Defendant was then and is now considered a career offender.  The Court notes that the 240-month sentence, which is the maximum sentence for the drug offense, falls near the middle of the applicable career offender Guidelines range of 210-262 months.

Second, the Government disputes that Defendant's recidivism risk is low based merely on his age, when "[i]n fact, the BOP has assessed defendant as having a "high risk recidivism level" based upon his Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") score.  *See* Govt. Opp'n., Ex. 2 (Inmate Profile), ECF No. 130-2; *see also* 18 U.S.C. Section 3632(a)(1) (each prisoner is classified by a PATTERN score as having a "minimum," "low," "medium," or "high" risk for recidivism, in ascending order). The Government notes that the Bureau of Prison's assessment is "corroborated by defendant's very poor disciplinary record during his incarceration [indicating that] Defendant has been sanctioned 18 times for disciplinary infractions." Govt. Opp'n., ECF No. 130, at 13; *see* Ex. 3 (BOP Disciplinary Record).

A review of Defendant's disciplinary record indicates that it includes two 100-level (most serious) offenses involving dangerous weapons, including an ice pick-style weapon hidden in an air vent above the toilet in his cell (1/19/16) and a metal shank that defendant wielded during a fight with another inmate (5/4/11).  Govt. Opp'n., ECF No. 130, at 13.  It also includes nine incidents involving violent or assaultive conduct (3/21/14, 7/17/13, 11/29/12, 7/17/12, 10/2/11, 5/4/11, 2/28/10, 2/23/09, 1/10/08), "one of which involved the above-mentioned metal shank (5/4/11), and another of which was a 100-level offense where defendant inflicted "serious injury" on another inmate (1/10/08)." *Id.* Furthermore, the Government reports that "[o]n at least four occasions, defendant has been sanctioned for threatening violent harm to correctional officers (6/21/17, 1/19/16, 7/6/12, 6/18/12), including one involving

threats to kill the officer, his wife and kids (1/19/16).  Govt. Opp'n., ECF No. 130, at 13-14; Ex. 3. The Government notes that fourteen of the incidents occurred after Defendant's 2009 re-sentencing, where he indicated to the Court his intent to be a "productive citizen" going forward.  Govt. Opp'n, ECF No. 130, at 14.  The Court finds that Defendant's long disciplinary record counters his contention that his expected rate of recidivism is low, and it weighs against any further reduction in sentence.  *Compare Mitchell*, *supra.* (where defendant who moved for a sentence reduction under the First Step Act had incurred no disciplinary infractions over the last fourteen years in prison and took advantage of various rehabilitative programs).  In that case, the court imposed a sentence of time served upon consideration of the Section 3553(a) factors and the defendant's post-sentencing rehabilitation.  *Mitchell*, 2019 WL 2647571, at *7-8.

Upon consideration of the Section 3553(a) factors in this case — primarily, Defendant's long criminal history and the danger to public safety — along with Defendant's age, risk of recidivism, and his long disciplinary record while incarcerated, this Court shall reduce Defendant's sentence from 250 months to 240 months, followed by 3 years of supervised release.  A separate Order accompanies this Memorandum Opinion.

DATED: September 3, 2020              _____/s/_____
                                     COLLEEN KOLLAR-KOTELLY
                                     UNITED STATES DISTRICT JUDGE